UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| IN RE: | CASE NO. 2:15-20370 |
|---|---|
| CARLOS JAMIN MANLEY and VANESSA DAWN MANLEY, | CHAPTER 13 |
| Debtors. | JUDGE FRANK W. VOLK |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Confirmation of Debtors' Chapter 13 Plan (Doc. 9) (the "Plan") and the objection by Vanderbilt Mortgage and Finance, Inc. (Doc. 26) (the "Objection"). The Plan included a Motion to Value Secured Property (the "Motion to Value"). On December 17, 2015, the Court heard the Motion to Value, which included certain testimony and exhibits.

The Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as made applicable by Fed. R. Bankr. P. 7052.

**I.**

Based upon consideration of the evidence admitted at the hearing, the Court makes the following findings of fact by a preponderance evidence:

1. The Debtors became indebted to Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") on or about September 22, 2011, pursuant to a Manufactured Home Retail Installment Contract and Disclosure Statement (the "Loan"). *Objection*, Exh. A.

2. The indebtedness was secured by placing a lien on the Certificate of Title of a 2010 Clayton Mobile Home, VIN CAP024791TNAB (the "Collateral"). *Objection*, Exh. B.

3. The original principal amount of the indebtedness was $62,893.80. The repayment terms were as follows: 144 monthly payments of $903.50. *Objection*, Exh. A.

4. The Debtors defaulted on the Loan in June of 2015 and their indebtedness currently stands at $57,070.48. *Objection*, paras. 5-6.

5. The Debtors filed a Chapter 13 petition on July 14, 2015.

6. Vanderbilt filed a Proof of Claim (no. 3-1) on July 28, 2015, listing the secured indebtedness as $54,686.44 and arrearages of $1,807.00. *Proof of Claim no. 3-1*. Attached to that proof of claim were the Loan documents and the pertinent Certificate of Title. *Id.*

7. The Debtors filed a Chapter 13 plan on July 14, 2015, which purported to value the Collateral at $20,000.[1] *Chapter 13 Plan, dock. No. 9*, pg. 7.

8. Vanderbilt objected to the Plan on August 19, 2015 (dock. no. 26), asserting that the value of the Collateral was "significantly more than $20,000." *Objection*, pg. 2.

9. Vanderbilt filed a Motion Requiring Debtors to Allow Appraisal (dock. no. 31), which was granted by this Court on October 8, 2015. The appraisal was performed on October 21, 2015.

10. The Court held a hearing on the Plan and the Objection on December 17, 2015. Vanderbilt tendered its appraisal as Exhibit 1 (the "Appraisal"), and called as a witness the appraiser, Walter Banks. Debtors' counsel did not tender any exhibits, nor did he produce any witnesses.

11. Vanderbilt's Appraisal listed the value of the home at $43,300. The appraiser testified that the Collateral was in good condition, and he made upward adjustments of value from the base for several components and accessories, including kitchen appliances, bathroom fixtures, a fireplace, a deck, and more. *See Appraisal, Vanderbilt's Exh. 1*, pgs. 4-5.

---

[1] The Plan incorrectly listed the Collateral as a 2011 Clayton Mobile Home.

## II.

### A. Governing Standard

This is a core proceeding pursuant to 28 U.S.C. § 157, as the matter arises under 11 U.S.C. §§ 506(a) and 1325(a)(5)(B). The Court is vested with subject jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

In the Plan, the Debtors are attempting to use the "cramdown" provision of § 1325(a)(5)(B). In order to do so, the

> (ii) value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
> (iii) if –
>
> > (I)　Property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> >
> > (II)　the holder of such claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan . . .

11 U.S.C. §§ 1325(a)(b)(B)(ii) – (iii) (2012). The question of value is addressed in 11 U.S.C. § 506(a), which states that

> (1) [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

> (2) If the Debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §§ 506(a)(1)-(2) (2012). Prior to the passage of BAPCPA, the term "replacement value," undefined in the Bankruptcy Code, was given meaning by the Supreme Court in the *Associates Commercial Corp.* case. *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997). Replacement value was "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Id.* at 960. So, when a debtor attempted to "cram down" a secured creditor under § 1325(a)(5)(B), "the value of property retained . . . is the cost the debtor would incur to obtain a like asset for the same proposed . . . use." *Id.* at 965.

Following enactment of § 506(a)(2) in 2005 as a part of BAPCPA, bankruptcy courts struggled with calculation of "retail value," or, the value a retail merchant would charge. In the quest to assign a number to that value in any case, a Court must hear and evaluate testimony in accordance with the qualification and credibility of expert witnesses. *In re Prewitt*, No. 15-60222, 2015 Bankr. LEXIS 4124, at *15 (Bankr. E.D. Tex. Dec. 8, 2015) (*citing In re Wright*, 460 B.R. 581, 584 (Bankr. E.D.N.Y. 2011); *In re Grind Coffee & Nosh, LLC*, 2011 Bankr. LEXIS 1335, at *6 (Bankr. S.D. Miss. Apr. 4, 2011)).

Oftentimes, multiple appraisers provide conflicting valuations, and "[w]hen two appraisal reports conflict, a court must determine the value based on the credibility of the appraisers, the logic of their analys[es] and the persuasiveness of their subjective reasoning." *In re 3G Props., LLC*, No. 10-04763-8-JRL, 2011 Bankr. LEXIS 4634, at * 20-21 (Bankr. E.D.N.C.

July 12, 2011) (*quoting In re Sailboat Props., LLC*, No. 10-03718-8-SWH, 2011 Bankr. LEXIS 1316, at *17 (E.D.N.C. Mar. 31, 2011)). Several factors have emerged to assist courts in weighing conflicting appraisal testimony. Those factors include: the appraiser's education, training, experience, familiarity with the subject of the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented. *Prewitt*, at *15 (*quoting Anderson v. Mega Lift Sys., LLC (In re Mega Systems, LLC)*, 2007 Bankr. LEXIS 1957, at *8 (Bankr. E.D. Tex., June 4, 2007)); *In re Smith*, 267 B.R. 568, 573-73 (Bankr. S.D. Ohio 2001). However, it is important to note that a court need not wholly accept the value of one appraiser over another – it can arrive at its own conclusion as to value based on its own interpretation of the evidence. *In re Breakwater Shores Partners, L.P.*, No. 10-61254, 2012 Bankr. LEXIS 1454, at *33 (Bankr. E.D. Tex. Apr. 5, 2012) (*citing in re Holcomb Health Care Servs., LLC*, 329 B.R. 622, 669 (Bankr. M.D. Tenn. 2004)); *see generally Sailboat Props.*, 2011 Bankr. LEXIS 1316.

And, if valuation testimony is provided by a property owner, that testimony is admissible, "but to sway the Court it must be persuasive." *In re Tucker*, No. 12-05872-HB, 2013 Bankr. LEXIS, at * 9 (Bankr. D.S.C. Jan. 25, 2013).

**B.   Analysis**

Creditor Vanderbilt was the only party to put forth an appraisal in this matter. Mr. Walter Bank, the appraiser, based his work on the National Appraisal System (the "NAS"). NAS is a specifically formulated system that addresses principally manufactured homes, and it works in tandem with the National Automobile Dealers Association's ("NADA") Used

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

Manufactured Home Cost Tool. *What is the National Appraisal System (NAS)?*, NADAGUIDES.COM (last visited Jan. 13, 2016), http://www.nadaguides.com/Manufactured-Homes/NAS-Definition. Courts view the NADA Guide as a "sound valuation base from which to assess the value of a particular manufactured home unit." *Prewitt*, 2015 Bankr. LEXIS 4124 at *16. NAS works by presenting an appraiser with a base value corresponding to the specific unit in question, and then allows for adjustment of that value based on location, condition, and accessories. *Id.* at *17. Further adjustment of the appraisal value occurs if and when appraisers look to comparative sales in the general area. *Id.* at *18 (*citing In re Meredith*, 2013 Bankr. LEXIS 3647 (Bankr. M.D. Pa. Aug. 28, 2013)).

The Court finds Mr. Bank to be a highly qualified appraiser. His expert status was stipulated to during the hearing, and he testified as an expert witness. Prior to the stipulation, however, Mr. Bank noted that he had been involved in mobile home financing for around forty (40) years. He has been a certified appraiser of mobile homes for ten (10) years, and has performed appraisals in West Virginia, among other states. He estimated that he had conducted close to one hundred (100) appraisals in West Virginia. Application of the factors discussed previously leads this Court to find Mr. Banks' testimony very persuasive. His training and experience are extensive, and he is very familiar with manufactured homes. During his testimony, he offered no contradicting evidence, demonstrated a pervasive knowledge of the property and of the value of mobile homes, and was able to fully substantiate his decisions to adjust upward or downward the value of the mobile home. He described his final value was "what a normal consumer would pay for this home in this condition," which corresponds to the "price a retail merchant would charge for property of that kind" language found in 11 U.S.C. § 506(a)(2).

In comparison, Debtors stood silent from an evidentiary standpoint. And cross-examination consisted of questions about Mr. Banks' previous experience testifying in bankruptcy cases, along with questions regarding the valuation. Mr. Banks testified that he saw no difference between fair market value and replacement value in this situation. And although Mr. Banks did not make specific comparisons to other sales in the area, he testified that he does generally evaluate home sales in the area to make sure they are consistent with the values in the NADA appraisal guide. The Debtors' only counter to Vanderbilt's valuation was their assertion in their Plan that the property was worth $20,000. The Debtors were not present at the hearing to provide testimony.

C.  **Conclusion**

Based on the evidence adduced, and for the reasons set forth herein, the Court accepts the valuation provided in Vanderbilt's Appraisal and finds that the value of the Manley's 2010 Clayton Mobile Home is $43,300. Thus, the Manley's Chapter 13 Plan does not stand in a confirmable posture at this time. Accordingly, it is

**ORDERED** that the 2010 Clayton Mobile Home is worth $43,300 for the purposes of plan confirmation.

**IT IS FURTHER ORDERED** that Confirmation of the Debtors' Chapter 13 Plan is **DENIED.** The Debtors are instructed to file an amended plan within 60 days of entry of this Order.

DATED: FEB 01 2016

Frank W. Volk
United States Bankruptcy Judge